829 A.2d 548

Cephus M. MURRELL, et al.

v.

MAYOR & CITY COUNCIL OF BALTIMORE.

No. 72, Sept. Term, 2001.

Court of Appeals of Maryland.

July 30, 2003.

Joseph S. Kaufman, Howard M. Schulman (Schulman & Kaufman, LLC, on brief), Baltimore, for petitioners.

Sandra R. Gutman, Chief Solicitor (Thurman W. Zollicoffer, Jr., City Solicitor, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, J.

The issue in this case is whether the judgment of the Circuit Court for Baltimore City, upholding an administrative decision by the Baltimore City Department of Housing and Community Development to raze certain buildings, was appealable to the Court of Special Appeals. The Court of Special Appeals, in an unreported opinion, held that the Circuit Court's judgment was not appealable in light of Maryland Code (1974, 2002 Repl.Vol.), § 12–302(a) of the Courts and Judicial Proceedings Article, and dismissed the appeal. We shall reverse.

## I.

Prior to setting forth the facts and arguments in the present controversy, it would be useful to review briefly some of the pertinent statutory procedural requirements which must be followed before the Baltimore City Department of Housing and Community Development is entitled to raze a condemned building.

The Building Code, Baltimore City Code (2000 Repl.Vol.), Art. 32, contains a comprehensive statutory scheme aimed at ensuring the legal use and occupancy of buildings in the City of Baltimore. The Department of Housing and Community Development is the administrative agency charged with the

administration, interpretation, and enforcement of the Building Code.[1] Section 105 of the Building Code prescribes the duties and powers of the "Building Code Official," stating that whenever any part of a building "become[s] dangerous, unsafe, or a menace to public health and safety, the Building Code Official may condemn it and take any other appropriate action to rectify or eliminate the dangerous or unsafe condition." § 105.2.[2]

Nevertheless, before the Building Code Official may take any action on a Building Code violation, the Official must give notice of the code violation to the person legally responsible for the maintenance of the building. *See* § 116.2. If the violation is not abated or the notice not complied with, the Official may then institute legal proceedings. *See* § 116.3.

Under § 119, if a structure is deemed "unsafe" or "unfit" for authorized use, the Building Code Official may require the owner to rehabilitate the building, or, if rehabilitation is not feasible, the Official may require the owner to raze the building. An order to raze is not final, however. Subsections 119.3.2.1 and 119.3.2.2 provide:

"**119.3.2.1 Appeal:** The recipient of an order to raze ... may request administrative review of the order under § 123.5.

"**119.3.2.2 Timetable for rehabilitation:** The Building Code Official may rescind or modify the order to raze if the owner demonstrates the financial ability and requisite expertise to rehabilitate the structure within a reasonable time, as determined by the Building Code Official, and agrees to comply with a specified timetable. Failure to comply with an agreed timetable reinstates the order to raze."

---

1. We shall hereafter refer to the Department of Housing and Community Development either as the "Department of Housing" or simply as the "Department."

2. Section 104.1 defines "Building Code Official" as "the Commissioner of Housing and Community Development or a duly authorized representative of the Commissioner."

Various actions are authorized under the Building Code to address the failure to comply with an order to rehabilitate or raze an unsafe building. These are listed in §§ 119.7 and 119.7.1:

"**119.7 Remedial action by Building Code Official:** The Building Code Official may take action under this [section] whenever the owner . . . cannot be found or fails to comply with a notice:

a. to repair, rehabilitate, stabilize, or raze an unsafe building or structure,

b. to clean, close, board, or otherwise safeguard a vacant building, or

c. to remove high grass and weeds or litter, trash, and debris from the premises of a vacant building.

"**119.7.1 Actions authorized:** Under the circumstances described in § 119.7, after giving notice as required by this Code, the Building Code Official may proceed to do any 1 or more of the following:

a. condemn the building,

b. have a receiver appointed, or

c. complete all or any part of the required work through officers, agents, employees, or contractors."

Thus, under § 119.7.1, the Building Code Official must give notice prior to razing a building that is deemed "unsafe" or "unfit" for authorized use. After receiving an order to raze or a condemnation notice, the owner of the building may seek administrative review under § 123.

Section 123 sets forth, *inter alia,* the right to administrative review of notices and orders, the procedural requirements for the administrative hearings, and the right to judicial review of administrative decisions. The detailed procedures for the administrative hearings can be found in § 123.6, which states in pertinent part as follows:

"**123.6 Procedure for hearings:** The Building Code Official shall conduct all hearings held under this Code in accordance with this § 123.6.

"123.6.1 **Hearings open to the public:** All hearings shall be open to the public.

"123.6.2 **Notification of complainants:** Before any hearing, the Building Code Official shall notify all persons who the Building Code Official knows are interested in the hearing of its scheduled date, time, place, and purpose.

* * *

"123.6.4 **Presiding Officer:** The Building Code Official presides at all hearings.

* * *

"123.6.6 **Decision of Building Code Official:** Within 30 days after a hearing is completed, the Building Code Official shall render a written decision that includes the reasons for the decision.

"123.6.7 **Records:** The Department shall keep a complete record of all papers filed in connection with any hearing, together with a copy of the Building Code Official's written decision."

## II.

Turning to the facts of this case, on August 17, 1992, the Department of Housing issued two notices of housing code violations to the petitioner Murrell for the buildings located at 562 Gold Street and 566 Gold Street.[3] The notices advised the petitioner to (1) "remove all trash and debris, high grass and weeds within ten (10) days of the date of this notice and keep in clean and sanitary condition at all times"; (2) "board up all accessible openings within ten (10) days of the date of this notice and notify inspector when this is done" as well as to "[k]eep these openings boarded until the building is razed or rehabilitated"; and, finally, to (3) "[r]epair and rehabilitate or raze after securing approval from the building official." The notices stated that "conditions must be corrected by 9/17/92

---

**3.** The petitioners in this case are Cephus M. Murrell and his corporation, C. Murrell Business Consultant, Inc. Hereafter, we shall refer to them collectively as the petitioner.

unless otherwise noted." The record in this case does not disclose what actions, if any, by either the petitioner or the Department, took place between August 17, 1992, and 1999.

On February 2, 1999, Alvin Waters, an inspector for the Department of Housing, inspected the three properties located at 562 Gold Street, 566 Gold Street, and 2201–2203 Pennsylvania Avenue. As a result of his inspection, Mr. Waters posted a condemnation notice upon each of the properties. Each notice of condemnation advised that the owner had a right to appeal. There is nothing in the record indicating that a condemnation notice was posted on the petitioner's property located at 564 Gold Street.

A week later, on February 9, 1999, Mr. Waters prepared a report for the Department of Housing describing the alleged code violations in detail, recommending that the three properties be condemned as a safety hazard, and stating that, if the conditions were not corrected or the buildings rehabilitated, the buildings should be razed. Specifically, his report noted as follows with respect to 562 Gold Street:

"This building has been abandoned, it is rodent infested, dilapidated. Lacks proper sanitation, heating, plumbing and utilities. Adjacent to a vacant building on either side and the building is a fire hazard; stress cracks in the side and rear masonry walls.

"Above deteriorating conditions of damage and decay cause the building to be unsafe and unfit for human habitation. [Section 119.0, 119.1, and 119.1.1 of the 1997 Baltimore City Bldg Code] Recommend building be condemned as a SAFETY HAZARD. If the above conditions are not corrected or the structure rehabilitated, building should be razed."

Next, regarding 566 Gold Street, Mr. Waters's report stated:

"This building has been abandoned, it is rodent infested, dilapidated. Lacks proper sanitation, heating, plumbing and utilities. Adjacent to a vacant building on either side and the building is a fire hazard; missing doors and windows, stress cracks in the side masonry wall.

"Above deteriorating conditions of damage and decay cause the building to be unsafe and unfit for human habitation. [Section 119.0, 119.1, and 119.1.1 of the 1997 Baltimore City Bldg Code] Recommend building be condemned as a SAFETY HAZARD. If the above conditions are not corrected or the structure rehabilitated, building should be razed."

Finally, his report recited the following for 2201–2203 Pennsylvania Avenue:

"The rear masonry wall has severe vertical and horizontal stress cracks with loose and bulging bricks, which appears to be in imminent danger of collapsing.

"Above deteriorating conditions of damage and decay cause the building to be unsafe and unfit for human habitation. [Section 119.0, 119.1, and 119.1.1 of the 1997 Baltimore City Bldg Code] Recommend building be condemned as a SAFETY HAZARD. If the above conditions are not corrected building should be razed."

The record does not contain an inspection report for 564 Gold Street.

On the same day, the Department of Housing mailed to the petitioner a letter for each of the condemned properties (562 Gold Street, 566 Gold Street, and 2201–2203 Pennsylvania Avenue), which enclosed a copy of the condemnation notice. The Department of Housing also sent to the petitioner letters notifying him of the impending charges and liens for the cost of razing the condemned properties. The Department of Housing sent four letters—they referred to (1) 562 Gold Street; (2) 566 Gold Street; (3) 2201–2203 Pennsylvania Avenue; and (4) 564 Gold Street. The letters, which were identical except for the property address referenced, stated:

"In accordance with the Condemnation Notice issued on February 2, 1999, this is to advise that the above-mentioned property, owned by you is to be razed. The work will be performed under emergency orders of the Director of Construction and Buildings Inspection. Under provisions of the Baltimore City Code, funds expended by the City to per-

form this work are chargeable against the owner and constitute a lien against the property.

"A bill covering the services performed by the City will be forwarded to you shortly.

"The purpose of this letter is to notify you of the impending bill and lien. Upon receipt of the bill for such emergency work, these charges must be paid within thirty (30) days to avoid further legal action. It is suggested that arrangements be made to satisfy this lien prior to the expiration of the thirty (30) days."

This was the first document referring to a problem with the 564 Gold Street property. Although the letters advised the petitioner that "[t]he work will be performed under emergency orders," the Department of Housing later stated: "While petitioner ... claims that these properties did not involve an emergency, [the Department of Housing] never claimed that their demolition did in fact constitute an emergency."

A month later, on March 8, 1999, the petitioner met with Mr. Harris, who was also an inspector from the Department of Housing. The petitioner related to Mr. Harris that he planned to renovate the buildings in question. Mr. Harris advised him to contact the Department of Housing, which, in turn, advised him to take an appeal. By letter dated March 15, 1999, the petitioner requested an appeal from the Department's determination and condemnation order. The petitioner then applied for permits to paint the exterior walls and to install windows for each of the properties on Gold Street, as well as to remove and replace the rear brick wall for the 2201–2203 Pennsylvania Avenue warehouse. These applications were received by the Department of Housing on April 1, 1999, and were each denied on April 6, 1999. Notably, an internal memorandum from the Department of Housing, dated the same day, stated in reference to the 2201–2203 Pennsylvania Avenue warehouse: "This is the building the Mayor ask[ed] the Commissioner to take down at the ribbon cutting on 3/31/99."

The petitioner then hired Derrick Burnett, an architect, to perform a building survey on the four subject properties. Mr. Burnett inspected the buildings and submitted a report to the petitioner on April 13, 1999. With respect to the three Gold Street properties, the report essentially stated that the structural integrity of the buildings was sound, but that some aesthetic improvements should be made. The report noted that the rear wall of the Pennsylvania Avenue warehouse should be repaired, but that the overall structural integrity of the building "appears to be sound and in good standing condition." A copy of this report was forwarded to the Department of Housing on April 14, 1999.

On April 13, 1999, the Department of Housing sent a letter to the petitioner granting his request for a hearing. The letter stated, in pertinent part:

"Please be advised that . . . your request for an Administrative Hearing has been granted relative to the City Condemnation and order to raze the subject property. The Hearing has been scheduled for:

Date: April 26, 1999

Time: 10:30 a.m.

Location: 417 E. Fayette Street, Room—1301"

The hearing took place as scheduled and was attended by the petitioner, his counsel, Mr. Burnett, and several officials from the Department of Housing. Mr. Dennis Taylor, who apparently had been designated by the Commissioner of Housing and Community Development as the "Building Code Official," see n. 2, supra, presided over the proceeding. According to an affidavit of Mr. Murrell later filed in the Circuit Court, Mr. Burnett at the hearing discussed the findings in his architectural report. In addition, Mr. Murrell stated in his affidavit that, at the hearing, he

"advised Mr. Taylor that the rear wall to the warehouse at 2201–2203 Pennsylvania Avenue could be repaired within two weeks and that the remaining work on all the properties, including 562–566 Gold Street, could be repaired within sixty days. Mr. Taylor advised me that this plan was

acceptable and that I should follow through and get the necessary construction permits."

The only "record" of the hearing is a single page of paper containing some handwritten notes. The notes recite that the petitioner intended to "restore the propert[ies] within 90 days," that he intended to "encapsulate [the] lead paint," and, referring to the 2201–2203 Pennsylvania Avenue property, that the "warehouse repairs will be made in two weeks." Nevertheless, Mr. Murrell stated in his affidavit, "[a]fter the meeting that day, April 26, 1999, I attempted to obtain construction permits for the properties but was advised by Shawn Karimian, at the Department of Housing ... that he would not authorize their issuance and that no matter what I did, the properties would be demolished."

On the same day as the hearing, the Commissioner of the Department of Housing, Mr. Daniel Henson, sent a letter to the petitioner stating as follows:

"This letter will serve as formal notification to you of the results of the hearing and my concurrence with the decision reached by the Hearing Officer. The results and decision are as follows:

1) The Hearing Panel determined by City records that you failed to repair and rehabilitate or raze your properties at the subject addresses which have severely deteriorated and constituted a threat to the public health and safety and;

2) Proper procedures were followed to notify you of the City Condemnation and order to raze the subject properties and;

3) Pursuant to 119.2 of Article 32 of the Baltimore City Building Code (as amended) the notice ordering you to raze the properties will remain in effect as issued and;

4) City demolition of the properties after your failure to do so will result in a lien being placed against them for the demolition work performed.

The record shows that this letter was returned "unclaimed" and was not received by the petitioner. In addition, although Commissioner Henson's letter refers to "the decision reached by the Hearing Officer," the record contains no such decision. Furthermore, the record contains nothing confirming that such a decision by the designated "Building Code Official," who conducted the hearing, was ever made.

On the following day, Commissioner Henson sent to the petitioner's counsel a letter stating:

"I am in receipt of your letter . . . which included a report by an architectural firm.

"After reviewing this report, I have determined that the condemnation notice will remain in effect based on the following:

1. The submitted report is not stamped by a licensed structural engineer; and

2. according to the Baltimore City Building Code, a structure can be condemned for reasons other than its structural integrity."

On May 4, 1999, Mr. Karimian from the Department of Housing approved the Department's application to raze the three properties located at 562, 564, and 566 Gold Street. Several days later, the Department's application to raze the warehouse located at 2201–2203 Pennsylvania Avenue was also approved.

On May 21, 1999, the petitioner filed, in the Circuit Court for Baltimore City, an action to review the Department's decision. Named as defendant was "The Department of Housing and Community Development of the Mayor and City Council of Baltimore." In an accompanying memorandum, the petitioner argued that the Department of Housing had failed to comply with the mandated procedures set forth in the Building Code. Additionally, the petitioner argued that the Department's actions violated Article 24 of the Maryland Declaration of Rights and Article III, § 40, of the Maryland Constitution. Following a hearing, the Circuit Court issued an order affirming the decision of the Department of Housing.

Within seven days after the Circuit Court's decision, the petitioner filed a motion to alter or amend the judgment of the Circuit Court pursuant to Maryland Rule 2–534. While this motion was pending, the Department of Housing razed the properties and assessed the costs to the petitioner. The petitioner's motion was denied by the Circuit Court on June 1, 2000.

The petitioner then filed a timely notice of appeal to the Court of Special Appeals. The respondent filed a motion to dismiss for lack of appellate jurisdiction, asserting that Maryland Code (1974, 2002 Repl.Vol.), § 12–302(a) of the Courts and Judicial Proceedings Article, precluded an appeal to the Court of Special Appeals.[4] The Court of Special Appeals, in an unreported opinion, granted the motion to dismiss, agreeing that § 12–302(a) precluded the appeal. With regard to the petitioner's contention that the action in the Circuit Court was "in the nature of a mandamus proceeding" and that, therefore, an appeal was authorized by § 12–301 of the Courts and

---

4. Sections 12–301 and 12–302(a) of the Courts and Judicial Proceedings Article provide in relevant part as follows:

" § **12–301. Right of appeal from final judgments—Generally.**

"Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment."

§ **12–302. Same—Exceptions.**

"(a) *District Court, administrative agency, or local legislative body.*—Unless a right to appeal is expressly granted by law, § 12–301 does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of the District Court, an administrative agency, or a local legislative body."

Section 123.7 of the Building Code provides:

" § **123.7 Judicial Review:** Within 30 days after the issuance of a decision under § 123.6, any person who is aggrieved by the decision may appeal the decision to the Circuit Court for Baltimore City."

The Baltimore City Building Code does not provide for an appeal to the Court of Special Appeals from the Circuit Court's decision.

Judicial Proceedings Article, the Court of Special Appeals stated:

"The facts do not support appellants' claim that the review in circuit court was not a judicial review action, but actually a mandamus action. . . .

* * *

"In this case, appellants sought judicial review of the decision of an administrative agency, [the Department of Housing], in the Circuit Court for Baltimore City. In their petition for judicial review, appellants requested that the circuit court 'reverse the decision of the Department of Housing and Community Development.' At no time did appellants style their review in circuit court as a mandamus action or request relief appropriate to a mandamus action, such as ordering [the Department of Housing] to mail conforming notices to appellants or to conduct an administrative hearing following the appropriate procedures. Instead, appellants sought review of the administrative procedures employed and factual and legal issues decided. In all respects, the circuit court action was an ordinary statutory judicial review action."

The petitioner filed in this Court a petition for a writ of certiorari, arguing that the action in the Circuit Court was "in substance a common law mandamus action" and was appealable under the principles set forth in *Gisriel v. Ocean City Elections Board*, 345 Md. 477, 485–500, 693 A.2d 757 (1997), *cert. denied*, 522 U.S. 1053, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998). The petitioner further argued that the respondent failed to comply with both statutory and constitutional requirements. The respondent, on the other hand, contended that the appeal was properly dismissed.[5] This Court granted

---

5. The respondent did not argue that the razing of the buildings has rendered this case moot, pointing out that there is still a controversy between the parties over "the liens which were imposed by the City for the cost of demolition of the properties" and whether the petitioner is responsible for "the cost of demolition." (Answer to certiorari petition at 6).

the certiorari petition, *Murrell v. Baltimore,* 365 Md. 472, 781 A.2d 778 (2001).

### III.

#### A.

This is the most recent in a line of cases involving the application of Maryland Code (1974, 2002 Repl.Vol.), § 12–302(a) of the Courts and Judicial Proceedings Article, which, *inter alia,* creates an exception to the general appeals statute for statutory actions in the circuit courts seeking judicial review of adjudicatory administrative decisions.[6] The general appeals statute, which is § 12–301 of the Courts and Judicial Proceedings Article, broadly authorizes appeals from final judgments in civil cases decided by the circuit courts. Section 12–302(a) of the Courts and Judicial Proceedings Article, however, provides that "§ 12–301 does not permit an appeal from a final judgment of a court entered ... in the exercise of appellate jurisdiction in reviewing the decision of ... an administrative agency...." This Court in *Kant v. Montgomery County,* 365 Md. 269, 274, 778 A.2d 384, 387 (2001), explained § 12–302(a) as follows:

---

**6.** Previous cases dealing with § 12–302(a) include, *e.g., Kant v. Montgomery County,* 365 Md. 269, 273–279, 778 A.2d 384, 386–389 (2001); *Prince George's County v. Beretta,* 358 Md. 166, 175–183, 747 A.2d 647, 651–656 (2000); *Gisriel v. Ocean City Elections Board,* 345 Md. 477, 485–496, 693 A.2d 757, 761–767 (1997), *cert. denied,* 522 U.S. 1053, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998); *Prince George's County v. American Federation,* 289 Md. 388, 397–400, 406, 424 A.2d 770, 774–776, 779 (1981); *Department v. Harmans,* 98 Md.App. 535, 542 n. 2, 633 A.2d 939, 943 n. 2 (1993); *Levitz Furniture Corp. v. Prince George's County,* 72 Md.App. 103, 108, 527 A.2d 813, 816, *cert. denied,* 311 Md. 286, 533 A.2d 1308 (1987); *Abbott v. Administrative Hearing Board,* 33 Md.App. 681, 685–686, 366 A.2d 756, 759 (1976), *cert. denied,* 280 Md. 727 (1977); *Prince George's County v. Fahey,* 28 Md.App. 312, 315–316, 345 A.2d 102, 104–105 (1975). For a detailed discussion of the historical background of § 12–302(a), *see Cardinell v. State,* 335 Md. 381, 415–424, 644 A.2d 11, 28–32 (1994) (dissenting opinion). The position taken in the dissenting opinion in the *Cardinell* case was adopted by this Court in *State v. Green,* 367 Md. 61, 785 A.2d 1275 (2001).

"Although § 12–302(a) refers to a circuit court exercising 'appellate jurisdiction' in reviewing the decision of an administrative agency or local legislative body, the word 'appellate' is a misnomer in this context. As we have often pointed out, a circuit court action reviewing the adjudicatory decision of an administrative agency or local legislative body is not an 'appeal.' Instead, it is an original action for judicial review. The above-quoted language in § 12–302(a), creating an exception to the general appeals statute, 'refers to an original circuit court action, authorized by statute, judicially reviewing an adjudicatory decision of an administrative agency or an adjudicatory decision of a local legislative body when it acts in a quasi-judicial capacity.' " Quoting *Prince George's County v. Beretta,* 358 Md. 166, 175, 747 A.2d 647, 652 (2000).

■ Since § 12–301 does not authorize an appeal from a circuit court judgment in a statutory action for judicial review of an adjudicatory administrative decision, any right of appeal in such a case must be found in some other statute. Where no other statute authorizes an appeal in the type of case covered by § 12–302(a), the Court of Special Appeals is not authorized to entertain the appeal and must dismiss it. *See Prince George's County v. Beretta, supra,* 358 Md. at 180–183, 747 A.2d at 654–656.

As the Court of Special Appeals correctly determined, § 123.7 of the Building Code limits judicial review of a decision of the Department of Housing to the Circuit Court for Baltimore City. It does not provide for an appeal to the Court of Special Appeals. Furthermore, no other statute which has been called to our attention expressly provides for such an appeal.

Consequently, the critical question in this case is whether the suit is a statutory judicial review action encompassed by § 12–302(a) or whether the suit can legitimately be treated as a common law mandamus action. If it is the former, as held by the Court of Special Appeals, then the intermediate appellate court correctly dismissed the appeal. If it is the latter, as

argued for by the petitioner, then the Circuit Court's judgment was appealable under § 12–301 of the Courts and Judicial Proceedings Article.

### B.

Although we have in some recent cases set forth the history of § 12–302(a) of the Courts and Judicial Proceedings Article, *see* n. 6, *supra*, it would be useful to review again some of that history. The historical background of a statute often casts light on the meaning or scope of that statute.

The principle embodied in § 12–302(a) began as a judicially created exception to the broad general appeals statute. The first Maryland case adopting the principle appears to be *Wilmington & Susquehanna Railroad Company v. Condon*, 8 G. & J. 443 (1837). That case involved an Act of the General Assembly authorizing the condemnation of property for a railroad, authorizing the sheriff to summon a jury to fix the value of the property condemned, and providing for judicial review in the County Court[7] of the decision by the sheriff's jury. An appeal to this Court was taken from the County Court's judgment affirming the jury's decision, but, in a brief one paragraph opinion, this Court held that the judgment was not appealable, reasoning as follows (8 G. & J. at 448, emphasis added):

> "From the nature and course of their proceedings, this power of review [of the decision by the sheriff's jury] is a fit subject for litigation in a County Court, but *it is wholly inappropriate to the jurisdiction of this Court.* It is a special limited jurisdiction given to the County Court, from the decision of which no appeal lies to any other tribunal."

While the Court in *Condon* pointed out that the statute authorizing judicial review of the sheriff's jury's decision did not expressly provide for an appeal to the Court of Appeals, the *Condon* opinion did not discuss or even cite the general

---

7. The County Courts were the predecessors of the present Circuit Courts.

appeals statute in effect at the time, the broad language of which would appear to authorize an appeal to the Court of Appeals.

The next case to dismiss an appeal under the principle announced in *Condon* appears to have been *Savage Manufacturing Co. v. Owings*, 3 Gill 497 (1846). In that case, an enactment of the General Assembly provided for a proceeding before a Commission if individuals petitioned for the opening of a public road, and the statute further provided for "confirmation" proceedings before a County Court. In the *Savage* case, the Commission ordered a public road to be opened, and the court confirmed the Commission's decision. An appeal to this Court was dismissed, with the Court stating (3 Gill at 498):

> "Jurisdiction of this proceeding is not exercised by the County Court, in virtue of its general powers, as a Court of common law; it is vested by a special delegation of power and by the terms of the Act which confers it, to be exercised, not according to the forms and course of the common law, but in a special and peculiar mode."

The Court went on to hold that neither a writ of error nor an appeal will lie "to a Court vested with special jurisdiction, and which does not proceed according to the forms of the common law." *Id.* at 499.

In *Gisriel v. Ocean City Elections Board, supra*, 345 Md. at 487–488, 693 A.2d at 762, we summarized the applications of the *Condon* and *Savage* rule as follows:

> This rule of construction was subsequently applied by this Court in a variety of contexts, including judgments of county courts or circuit courts reviewing decisions by justices of the peace, *Herzberg v. Adams*, 39 Md. 309, 312 (1874); *Hough v. Kelsey & Gray*, 19 Md. 451, 455–456 (1863); *State v. Mister*, 5 Md. 11, 15 (1853); *Crockett v. Parke*, 7 Gill. 237, 240 (1848); judgments of the Baltimore City Court reviewing judgments of People's Court of Baltimore City, *Montgomery Ward v. Herrmann*, 190 Md. 405, 408–411, 58 A.2d 677, 678–680 (1948); judgments of county

and circuit courts reviewing decisions of local government officials, *Co. Commrs. Harford Co. v. Jay,* 122 Md. 324, 327, 89 A. 715, 717 (1914); *Stephens v. Mayor & Council of Crisfield,* 122 Md. 190, 192–193, 89 A. 429, 429–430 (1914); *Webster v. Cockey,* 9 Gill 92, 93–95 (1850); circuit court judgments reviewing certain decisions of orphans' courts, *Lammott v. Maulsby,* 8 Md. 5, 8–9 (1855); and circuit court judgments in actions for judicial review of administrative agency decisions, *Simpler v. State, Use of Boyd,* 223 Md. 456, 460–461, 165 A.2d 464, 466 (1960); *Johnson v. Board of Zoning Appeals,* 196 Md. 400, 406–407, 76 A.2d 736, 738 (1950).

We went on in the *Gisriel* opinion to point out that, in more recent times, the rule has been most frequently applied to preclude appeals in statutory actions for judicial review of administrative adjudicatory decisions (345 Md. at 488, 693 A.2d at 762–763):

"The rule precluding, under the general appeals statute, appeals from circuit court judgments in cases of special limited statutory jurisdiction, persisted despite several recodifications of the general appeals statutes by the Legislature containing no mention of the rule. Furthermore, in later years, the rule was frequently applied to limit appeals from circuit court judgments reviewing decisions of administrative agencies. *See, e.g., Prince George's Co. v. AFSCME Council 67,* 289 Md. 388, 397–400, 406, 424 A.2d 770, 774–776, 779 (1981); *Urbana Civic v. Urbana Mobile,* 260 Md. 458, 461, 272 A.2d 628, 630 (1971) (' "The rule is that where an inferior court exercises a special limited jurisdiction which is conferred by statute, no appeal from its decision in such cases lies to this [C]ourt unless expressly given by the statute" '); *Md. Pharmacy Board v. Peco, Inc.,* 234 Md. 200, 202, 198 A.2d 273, 274 (1964) ('the provisions of [the general appeal statute] do not apply to cases where the trial court exercises a special or limited jurisdiction conferred by statute'); *Hart v. Commr. of Motor Vehicles,* 226 Md. 584, 587, 174 A.2d 725, 726 (1961); *Simpler v. State, Use of Boyd, supra,* 223 Md. at 460–461, 165 A.2d at 466; *Bd. of Med.*

*Examiners v. Steward,* 203 Md. 574, 580–581, 102 A.2d 248, 251 (1954); *Johnson v. Board of Zoning Appeals, supra,* 196 Md. at 406–407, 76 A.2d at 738; *Abbott v. Administrative Hearing Board,* 33 Md.App. 681, 685–686, 366 A.2d 756, 759 (1976), *cert. denied,* 280 Md. 727 (1977); *Prince George's County v. Fahey,* 28 Md.App. 312, 315–316, 345 A.2d 102, 104–105 (1975)."

Finally, we pointed out in *Gisriel* that the General Assembly in 1973 abolished most applications of the rule, but for the first time, embodied the rule in a statute with regard to judicial review actions of adjudicatory administrative decisions and adjudicatory local government decisions. We further pointed out that the practical impact of the rule is almost entirely with regard to adjudicatory decisions by local government administrative agencies and governmental bodies (345 Md. at 488–490, 693 A.2d at 763, footnotes omitted):

"In 1973, the General Assembly recodified the appeals statutes in its enactment of the Courts and Judicial Proceedings Article of the Code, which became effective on January 1, 1974. With its enactment of § 12–301, the Legislature retained the broad, general grant of the right to appeal. In addition, § 12–301 partially abrogated the above-discussed rule by expressly stating that the right of appeal existed 'from a final judgment by a court in the exercise of original, special, limited, statutory jurisdiction' unless expressly denied by law. Thus the Legislature abolished a large part of the doctrine disallowing appeals from circuit court judgments entered pursuant to the exercise of special limited statutory jurisdiction.

"The Legislature, however, expressly retained a portion of the doctrine by its enactment of § 12–302(a), which makes § 12–301 inapplicable to appeals from final judgments of circuit courts reviewing decisions of the District Court, administrative agencies, or local legislative bodies. Nevertheless, judgments of the circuit courts reviewing decisions of the District Court are generally subject to further discretionary appellate review by petitions for writs of certiorari filed in the Court of Appeals. *See* §§ 12–305

and 12–307(2) of the Courts and Judicial Proceedings Article. Moreover, appeals to the Court of Special Appeals from judgments of the circuit courts reviewing decisions of most *state* administrative agencies are generally authorized by the Maryland Administrative Procedure Act, Code (1984, 1995 Repl.Vol.), § 10–223(b) of the State Government Article. Consequently, the viability of the non-appealability principle adopted in ... *Condon, supra,* 8 G. & J. at 448–449, and partially embodied in § 12–302(a) of the Courts and Judicial Proceedings Article, is today largely limited to circuit court judgments in cases involving statutory judicial review of adjudicatory or quasi-judicial decisions by *local* government administrative agencies and legislative bodies."

 Because the impact of § 12–302(a) is chiefly upon actions for judicial review of local government adjudicatory administrative decisions, the right to appeal a circuit court's decision in these judicial review actions is primarily dependent upon local laws. Some subdivisions, such as Montgomery County, broadly authorize appeals to the Court of Special Appeals from circuit court judgments reviewing local administrative adjudicatory decisions. Other subdivisions, such as Prince George's County, do not broadly authorize such appeals. Thus, the right to an appeal in a large group of cases is dependent upon a person's geographical situation.[8]

---

**8.** Thus, if a person in Montgomery County is discriminated against in violation of local law, he or she is entitled to institute an adjudicatory administrative action, to bring a circuit court suit for judicial review of an adverse final administrative decision, to appeal an adverse circuit court decision to the Court of Special Appeals, and to request that this Court issue a writ of certiorari to review the matter. A similarly situated person in Prince George's County who is discriminated against in violation of local law has the same type of remedies until the decision of the circuit court. The person in Prince George's County, however, is not entitled to appeal to the Court of Special Appeals or to request that this Court issue a writ of certiorari. *Compare Kant v. Montgomery County, supra,* 365 Md. 269, 778 A.2d 384, with *Prince George's County v. Beretta, supra,* 358 Md. 166, 747 A.2d 647.

Consequently, as a result of § 12–302(a) of the Courts and Judicial Proceedings Article, the availability of a remedy in Maryland's statewide intermediate appellate court and in its supreme court, for identi-

## C.

As shown by the historical background reviewed above, the rule that is now reflected in § 12–302(a) of the Courts and Judicial Proceedings Article was based upon this Court's nineteenth century aversion to entertaining statutory causes of action which were not in accord with "the forms and course of the common law," *Savage*, 3 Gill at 498. While "a fit subject for litigation in a County Court," such statutory causes of action were deemed "wholly inappropriate to the jurisdiction of this Court." *Condon*, 8 G. & J. at 448. *See also Williams v. Williams*, 5 Gill 88, 90 (1847) ("This is no case, either of law, or of equity. There can be no right of appeal in such a case as this"); *Crockett v. Parke*, 7 Gill 237, 240 (1848)

---

cal causes of action, by persons who are otherwise identically situated, is entirely dependent upon where in Maryland the persons are located.

No prior case in this Court, to the best of our knowledge, has involved an equal protection challenge to the above-described operation of § 12–302(a), based upon the equal protection component of Article 24 of the Maryland Declaration of Rights. In this connection, *compare, Frankel v. Board of Regents*, 361 Md. 298, 312–318, 761 A.2d 324, 331–334 (2000); *Verzi v. Baltimore County*, 333 Md. 411, 419–424, 635 A.2d 967, 970–973 (1994); *Bruce v. Director, Dept. of Chesapeake Bay Affairs*, 261 Md. 585, 276 A.2d 200 (1971); *Md. Coal & Realty Co. v. Bureau of Mines*, 193 Md. 627, 642–643, 69 A.2d 471, 477 (1949); *Dasch v. Jackson*, 170 Md. 251, 269–270, 183 A. 534, 542 (1936); and *Havre de Grace v. Johnson*, 143 Md. 601, 123 A. 65 (1923); *with, Department of Transportation v. Armacost*, 299 Md. 392, 408–411, 474 A.2d 191, 199–201 (1984); *Hornbeck v. Somerset County Board of Education*, 295 Md. 597, 640–657, 458 A.2d 758, 780–790 (1983); and *Supermarkets General Corp. v. State*, 286 Md. 611, 618–624, 409 A.2d 250, 253–257 (1979), *appeal dismissed*, 449 U.S. 801, 101 S.Ct. 45, 66 L.Ed.2d 5 (1980).

The petitioner in the present case does make several constitutional arguments, including the argument that preclusion of an appeal to the Court of Special Appeals, under the circumstances of this case, is a violation of the Maryland Constitution. Nevertheless, the petitioner at the present time does not appear to make an equal protection argument with regard to § 12–302(a). Regardless of the nature of the constitutional arguments which are made, however, we need not at this time decide any constitutional issues because of our resolution of this case on grounds of statutory interpretation and application. "[T]his Court adheres to the established principle that a court will not decide a constitutional issue when a case can properly be disposed of on a non-constitutional ground." *Jordan v. Hebbville*, 369 Md. 439, 461 n. 20, 800 A.2d 768, 781 n. 20 (2002), quoting earlier cases with internal quotation marks omitted.

(reaffirming *Condon* and *Savage,* and refusing to accord a "literal construction to the [general appeals] Act of 1785"); *Hamilton v. Annapolis and Elk Ridge Rail Road Company,* 1 Md. 553, 567 (1852) ("the county court . . . [had] final jurisdiction" as the "county court was the proper place" for such statutory jurisdiction).

Consequently, we have applied § 12–302(a) in light of its historical background. Thus, we have not applied it to preclude appeals in actions, however styled or captioned, which are essentially common law mandamus actions.

*Gisriel v. Ocean City Elections Board, supra,* 345 Md. 477, 693 A.2d 757, was a circuit court action challenging a decision by the Ocean City Board of Supervisors of Elections, affirmed by the City Council of Ocean City, refusing to place a recent zoning ordinance on the ballot for the next election. The refusal was based on the Board's and Council's determination that the referendum petition did not contain the signatures of 20% of the City's "qualified voters" as required by the Ocean City Charter. This determination was in turn based on the Board's and Council's refusal to strike from the list of registered voters certain names of persons who, according to the plaintiff, were not "qualified voters." If the names of these persons had been stricken from the registration list, as argued for by the plaintiff, the number of signatures on the referendum petition would have met the 20% requirement. The plaintiff Gisriel purported to bring his circuit court action pursuant to a provision of the Ocean City Charter authorizing appeals from decisions of the Board of Elections to the City Council, and further authorizing judicial review in the circuit court of decisions by the City Council on such appeals. The provision did not, however, authorize an appeal to the Court of Special Appeals from the circuit court's decision. The circuit court in the *Gisriel* case agreed with the plaintiff's position; the court ordered the Board to remove from the voter registration list the names of those persons whom the plaintiff contended were not "qualified voters" before determining whether the referendum petition contained the requisite number of signatures. The Court of Special Appeals entertained

the appeal and reversed, on the merits, the circuit court's decision. This Court held that the Court of Special Appeals had jurisdiction over the appeal and affirmed the judgment of the intermediate appellate court.

In holding that § 12–302(a) of the Courts and Judicial Proceedings Article did not bar the appeal in *Gisriel,* this Court initially pointed out that § 12–302(a) is applicable "when a circuit court proceeding *in substance* constitutes *ordinary judicial review* of an adjudicatory decision by an administrative agency or local legislative body, pursuant to a statute, ordinance, or charter provision," 345 Md. at 496, 693 A.2d at 766–767, emphasis added. We next explained in *Gisriel,* 345 Md. at 496–497, 693 A.2d at 767, that the manner in which a plaintiff styled the action, and the plaintiff's reliance upon a statutory judicial review provision, did not determine "the nature of his action" or whether it was "a statutory judicial review action unknown to the common law at the time when the principle embodied in § 12–302(a) was first adopted by this Court in . . . *Condon* . . . and *Savage*. . . . "

The Court went on to hold that "Gisriel's action in substance was a traditional common law mandamus action" which was appealable under § 12–301 of the Courts and Judicial Proceedings Article. 345 Md. at 497, 693 A.2d at 767. We stated that the purpose of a traditional common law mandamus action is "to compel . . . public officials or administrative agencies to perform their function, or perform some particular [non-discretionary] duty imposed upon them," *ibid.,* quoting *Goodwich v. Nolan,* 343 Md. 130, 145–148, 680 A.2d 1040, 1047–1049 (1996) (internal quotation marks omitted). We pointed out that the theory of the plaintiff Gisriel's action was "that the Board had a non-discretionary duty to delete from the Ocean City registered voter list the names of unqualified voters before determining the percentage of voters who had signed the petition," that "[a]ny issues requiring the resolution of disputed facts would not arise until the Board begins to perform this duty," and that the case did not at that time involve "the substantiality of the evidence supporting factual findings, the reasonableness of inferences and conclusions, etc.

[that] would constitute a judicial review action authorized by ... the Ocean City Charter." 345 Md. at 497–498, 693 A.2d at 767–768.

The Court concluded in *Gisriel,* 345 Md. at 499–500, 693 A.2d at 768, that,

"whether sound or not, the non-appealability principle [of § 12–302(a)] was based entirely on the conclusion that the trial court was exercising a statutory type of jurisdiction unknown to the common law.

"Consequently, the principle embodied in § 12–302(a) has no application to common law actions. Both before and after the enactment of § 12–302(a), this Court has regularly exercised appellate jurisdiction in mandamus actions against administrative agencies and officials." *See, e.g., Goodwich v. Nolan, supra,* 343 Md. 130, 680 A.2d 1040; *Board v. Secretary of Personnel, supra,* 317 Md. at 45–49, 562 A.2d at 705–707; *Tabler v. Medical Mut. Liab. Ins.,* 301 Md. 189, 202–203, 482 A.2d 873, 880 (1984); *Bovey v. Exec. Dir., Health Claims Arbitration Office,* 292 Md. 640, 441 A.2d 333 (1982); *Md. Action For Foster Children v. State,* 279 Md. 133, 138–139, 367 A.2d 491, 494 (1977); *State's Atty. v. City of Balto.,* 274 Md. 597, 608, 337 A.2d 92, 99 (1975); *State Health Dep't v. Walker,* 238 Md. 512, 522–524, 209 A.2d 555, 560–562 (1965); *Hammond v. Love,* 187 Md. 138, 49 A.2d 75 (1946); *Heaps v. Cobb,* 185 Md. 372, 45 A.2d 73 (1945); *Hecht v. Crook,* 184 Md. 271, 40 A.2d 673 (1945); *Walter v. Bd. of Cty. Comr's of Montgomery County,* 180 Md. 498, 25 A.2d 682 (1942).

This Court in *Prince George's County v. Beretta, supra,* 358 Md. 166, 747 A.2d 647, further explained the distinction between a statutory judicial review action covered by § 12–302(a), and a common law action appealable under § 12–301. *Beretta* was clearly a statutory judicial review action, involving an employee's claim of discrimination in violation of local law, an administrative hearing at which evidence was introduced and transcribed, administrative findings of fact and conclusions of law, and judicial review pursuant to a local ordinance.

The plaintiff-employer in the circuit court argued that the administrative agency's "finding of retaliation discrimination was not supported by substantial evidence," that the employee "had failed to introduce sufficient evidence in support of the award of back pay," that the "award of damages for humiliation and embarrassment was unsupported by substantial evidence," that procedural errors were committed by the agency, and that other legal errors occurred. *Beretta,* 358 Md. at 171, 747 A.2d at 649. The Court of Special Appeals held that an appeal as to some issues was barred by § 12–302(a), but that the circuit court's decision as to other issues was appealable because the latter issues could have been raised in a common law mandamus action or a declaratory judgment action.

In holding that the circuit court's judgment was not appealable at all, this Court stated (*Beretta,* 358 Md. at 177, 747 A.2d at 653):

"Section 12–302(a) does not relate to what issues may be considered on appeal and what issues may not be considered. Rather, the language of the statute, and the case law on which the statute was based, preclude any appeal to the Court of Special Appeals in a particular type of case."

We later pointed out that "[t]here is also no exception to the non-appealability doctrine embodied in § 12–302(a) for issues which could have been litigated in some alternative judicial proceeding." 358 Md. at 182, 747 A.2d at 656. We concluded that the non-appealability rule of § 12–302(a) depended upon the overall "substance" of the circuit court action. The issue is whether the action, as a whole, "should in substance be viewed as a ... mandamus action" or whether it more resembles "a typical statutory judicial review action." 358 Md. at 183, 747 A.2d at 656.[9]

---

**9.** We readily acknowledge that the test set forth in *Gisriel* and *Beretta,* for determining whether § 12–302(a) bars an appeal, may be difficult to apply in many cases and is quite unsatisfactory. This results from the flawed basis for the doctrine set forth in the early cases. Both in the nineteenth century, and today, court actions to review determinations by government officials and agencies presented, and still present, issues which common law courts have traditionally decided as well as non-

### D.

 The present case, in substance, is like *Gisriel* and not *Beretta.* The gist of the petitioner's complaints, at this stage, is a failure of the Department of Housing to perform several non-discretionary mandatory duties under the Baltimore City Code and principles of Maryland administrative law. The complaints concern the failure to give required notices, failure to render findings of fact and conclusions of law after the hearing, the failure of the designated "Building Code Official" who presided at the hearing to render the decision, and the failure to make an adequate "record" of the hearing.

There could be no issue at this stage of the case as to whether the administrative findings of fact were supported by substantial evidence because, in a real sense, there were no such findings of fact. There was also no record of the evidence introduced at the hearing in order for a reviewing court to determine whether findings of fact, if they had been made, were supported by substantial evidence. There were no real conclusions of law for a reviewing court to determine if errors of law had been made. Finally, there was no proper final administrative decision to be judicially reviewed.

To reiterate, all of these asserted failures were of a non-discretionary type. They were ministerial procedural duties which were mandated by the Baltimore City Code and principles of Maryland administrative law. The petitioner correctly argues that the substance of the circuit court action was a common law mandamus action. *See also Maryland Transportation Authority v. King,* 369 Md. 274, 287, 799 A.2d 1246, 1253 (2002) ("mandamus or other traditional actions may lie to enforce administrative compliance with procedural requirements or duties"). Accordingly, the decision by the Circuit Court for Baltimore City was appealable to the Court of

---

traditional statutory issues. Making appealability, under a broad general appeals statute, depend upon what an appellate court in 1837 wanted to hear, is somewhat absurd. If the judge-made principle had not been embodied in a statute in 1973, this Court could abrogate it as an unsound example of nineteenth century judicial activism.

Special Appeals under § 12–301 of the Courts and Judicial Proceedings Article.

## IV.

█ The petitioner has also demonstrated that the Department's failure to comply with mandatory procedural duties requires that the Department's decision be reversed and that the case be remanded to the Department for further administrative proceedings.

The facts of the case, reviewed in Part II of this opinion, clearly show that some required notices were not given, although the record is not sufficient for a judicial determination of whether the petitioner was prejudiced by the notice deficiencies. *Cf. Pollock v. Patuxent Institution Board of Review,* 374 Md. 463, 823 A.2d 626 (2003); *Maryland Transportation Authority v. King, supra,* 369 Md. at 286, 799 A.2d at 1252–1253.

In addition, § 123.6 of the Baltimore City Code requires that the "Building Code Official," who may be either the Commissioner of Housing or his duly authorized representative, preside at the hearing and render the written decision. The statute clearly contemplates that the same person who presided at the hearing also render the written decision. The record shows that this was not done in the present case. Moreover, this may well be the type of structural error whereby prejudice is presumed. The obvious purpose of the requirement is to have the person who heard the witnesses, read the documentary evidence, and listened to the arguments, render a written decision. The petitioner was denied a written decision by the person who did hear the testimony, read the documentary evidence, and heard the arguments. Such denial is presumptively prejudicial.

Most significantly, the Baltimore City Building Code requires that the hearing officer's decision contain "the reasons for the decision." This is in accord with the general requirement of Maryland administrative law that, following an adjudicatory hearing, there must be adequate findings of fact and

conclusions of law. In *Harford County v. Earl E. Preston, Jr., Inc.,* 322 Md. 493, 505, 588 A.2d 772, 778 (1991), Judge Karwacki for the Court explained:

> "This requirement is in recognition of the fundamental right of a party to a proceeding before an administrative agency to be apprised of the facts relied upon by the agency in reaching its decision and to permit meaningful judicial review of those findings. In a judicial review of administrative action the court may only uphold the agency order if it is sustained by the agency's findings and for the reasons stated by the agency. *Motor Vehicle Admin. v. Mohler,* 318 Md. 219, 231, 567 A.2d 929, 935 (1990); *Baltimore Heritage, Inc. v. Mayor and City Council of Baltimore,* 316 Md. 109, 113, 557 A.2d 256, 258 (1989); *United Steelworkers v. Bethlehem Steel,* 298 Md. 665, 679, 472 A.2d 62, 69 (1984); *Turner v. Hammond,* 270 Md. 41, 55–56, 310 A.2d 543, 551 (1973); *Pistorio v. Zoning Board,* 268 Md. 558, 570, 302 A.2d 614, 619 (1973)."

*See also Mehrling v. Nationwide Ins. Co.,* 371 Md. 40, 62–63, 806 A.2d 662, 675–676 (2002); *Annapolis Mkt. Place, LLC v. Parker,* 369 Md. 689, 718, 802 A.2d 1029, 1046 (2002) ("findings of fact by an administrative agency 'must be meaningful and cannot simply repeat statutory criteria, broad conclusory statements, or boilerplate resolutions' "); *Bucktail, LLC v. County Council of Talbot County,* 352 Md. 530, 552–553, 723 A.2d 440, 450–451 (1999) (holding that the agency's findings were insufficient to permit judicial review); *County Council of Prince George's County v. Brandywine Enterprises, Inc.,* 350 Md. 339, 348, 711 A.2d 1346, 1350 (1998); *Mossburg v. Montgomery County,* 329 Md. 494, 507, 620 A.2d 886, 893 (1993). The written administrative decision in the case at bar was virtually devoid of any meaningful findings of fact and conclusions of law.

Finally, § 123.6.7 of the Baltimore City Building Code requires a "complete record" of all documentary evidence introduced at the hearing. Moreover, substantial evidence judicial review obviously requires a transcript or some other record of the testimony at an adjudicatory hearing. *Cf.* Code (1984,

1999 Repl.Vol.), § 10–215 of the State Government Article ("All or part of a proceeding in a contested case shall be transcribed ..."). As previously mentioned, even if there had been findings of fact in this case, the record of the adjudicatory hearing would be totally inadequate for determining whether any such findings were supported by substantial evidence.

█ Governmental action razing privately owned buildings is serious business, often implicating important constitutional rights. *Cf. Becker v. State,* 363 Md. 77, 767 A.2d 816 (2001). It is important that such governmental action comply with the procedures mandated by law. In this case, the governmental action did not comply with such procedures.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THE CIRCUIT COURT WITH FURTHER DIRECTIONS TO REVERSE THE DECISION OF THE DEPARTMENT OF HOUSING AND REMAND THE CASE TO THE DEPARTMENT OF HOUSING FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.*

Dissenting opinion by WILNER, J., in which HARRELL, J., joins.

With respect, I dissent. I agree with most of the Court's Opinion. Indeed, my disagreement is principally limited to the conclusion reached in Part III—D, that this action is in the nature of a mandamus action. There is no basis, in my view, for such a conclusion. Apart from the fact that it is flatly inconsistent with *Prince George's County v. Beretta,* 358 Md. 166, 747 A.2d 647 (2000), the fact is that this action was not filed as an action for mandamus. It was filed, by experienced counsel, as an action for judicial review pursuant to

§ 123.7 of the Baltimore City Building Code.[1] It was treated throughout as an action for judicial review. Only when petitioner lost in the Circuit Court and realized that, because of Courts and Judicial Proceedings Article, § 12–302, no appeal was permissible did this suddenly become an action for mandamus.

In order to save petitioner from the clear legal effect of the form of action he quite properly chose to pursue, the court now concludes that the action was *not* what petitioner said it was and not what the Circuit Court and the Court of Special Appeals correctly regarded it as being, but something else. The effect of treating this action as one for mandamus is to render nugatory that part of Courts and Judicial Proceedings Article, § 12–302, disallowing appeals from judgments of a Circuit Court rendered in judicial review actions, absent some other statutory basis for an appeal.

The underlying complaint here, which appears to be well-founded, is that the Baltimore City Department of Housing and Community Development failed to comply with certain procedures that governed the administrative process—it failed to give proper notice, it failed to make and keep a proper record of the proceeding, it failed to make proper findings of fact and conclusions of law. Those claims are cognizable in the traditional judicial review action that petitioner filed in this case. Indeed, those are the kind of claims often made in actions for judicial review. To make those failures, fully correctable in a judicial review action, subject to the extraordinary writ of mandamus, on the theory that an agency has no discretion to violate those kinds of requirements, is to stretch the reach of mandamus far beyond what it ever was intended to be and, at the same time, render unnecessary statutory judicial review actions. Why file an action for judicial review,

---

1. Section 123.7, captioned "Judicial Review," provides that, within 30 days after issuance of a decision by the Building Code Official, any person aggrieved by the decision "may appeal the decision to the Circuit Court for Baltimore City." We have made clear that such an action is not an appeal, but rather an original action for judicial review. It is clearly not an action for mandamus.

especially if there is no appeal from the ruling of the Circuit Court, when one can get precisely the same review and relief, with an appeal, in a mandamus action?

The use of a mandamus action to review administrative decisions was always intended to be limited, especially when statutory judicial review exists. Prior to the enactment of general statutes allowing judicial review of administrative agency decisions, mandamus was necessary to preserve the authority of the courts to protect against arbitrary and capricious governmental action. In *Heaps v. Cobb*, 185 Md. 372, 379, 45 A.2d 73, 76 (1945), we pointed out that administrative agencies were not clothed with judicial authority and that the Legislature was "without authority to divest the judicial branch of the government of its inherent power to review actions of administrative boards shown to be arbitrary, illegal or capricious, and to impair personal or property rights ..." *Id.* *See also Hecht v. Crook*, 184 Md. 271, 40 A.2d 673 (1945).

That principle still applies, but once statutory judicial review actions became widely authorized and available to correct both substantive and procedural errors committed by administrative agencies, mandamus actions became largely unnecessary. There was no need to resort to what had always been regarded as an extraordinary writ in order to provide judicial review. Virtually every legally cognizable complaint made about an administrative proceeding is subject to review in a traditional statutory judicial review action, and certainly every complaint made by petitioner in this case was subject to review in the statutory judicial review action that he filed.

The only reason the Court insists on ramming this action into the mandamus mold is that the Mayor and City Council have omitted to provide for an appeal from the decision of the Circuit Court and, under § 12–302 of the Courts and Judicial Proceedings Article, that omission precludes such an appeal in a statutory judicial review action. There is no inherent right of appeal, however. We have often made clear that the right of appeal is statutory and that, subject only to limited supervening Constitutional mandates, which do not exist here, there

is no right of appeal absent some statutory authority. *State v. Green*, 367 Md. 61, 785 A.2d 1275 (2001); *Pack Shack, Inc. v. Howard County*, 371 Md. 243, 808 A.2d 795 (2002).

The Court, in retrospect, may not like the policy decision made by the Legislature, but the fact is that the Legislature, consistent with the then-current view of this Court, made a conscious choice to stop judicial review of administrative decisions at the Circuit Court level unless it, or some authorized local legislative body, expressly provided otherwise. The General Assembly has, for the most part, provided otherwise, through the Administrative Procedure Act and other statutes dealing with specific kinds of administrative proceedings not subject to the APA. Local legislative bodies have provided for appeals from the Circuit Court in some instances, but not in others. If there is some perceived deficiency, it is easily correctable by legislation. It should not be corrected by this Court's creative, but unwarranted, stretching of the common law mandamus action. Perhaps this is a hard case, in the sense that the Circuit Court made a mistake, but we should not allow that to make bad law, which is precisely what the Court is doing.

I would affirm the order of the Court of Special Appeals dismissing the appeal. Judge Harrell authorizes me to state that he joins in this dissent.